## Commonwealth v. Getto et al.

*Warren S. Burchinal*, district attorney, for Commonwealth.
*Jacob Margolis* and *Patsy V. Marino*, for defendants.

CUMMINS, J., October 12, 1931.—The defendants, Adam Getto, Mike Tarras and Joseph Getto, were indicted, tried and found guilty of the charge of riot. They now ask the court in banc for a new trial and for an arrest of judgment,

contending that the verdict was against the law, the evidence, the weight of the evidence, the charge of the court, and that the charge of the court was in error, without specifying in what particular it might have been in error.

While the testimony was in some respects in conflict, there was ample evidence from which the jury could have found the following to have been the facts. The Borough of Ellsworth is a municipality in this county. In this borough is located one of the mines of the Ellsworth Collieries. The miners employed there were not on a strike; and on the morning of June 8, 1931, were intending to go to work as usual. It was rumored that, during the early morning of that day, a large body of men, members and sympathizers of the National Miners Union, would march on that town and by intimidation, force and violence, overcome the peace officers of that municipality and prevent the employes at that mine from going to work. Anticipating violence, the merchants, on the highway over which the marchers would come, barricaded the windows of their stores. The chief burgess of that borough, in order to maintain order, had sworn in quite a number of special borough police; and these and other officers were congregated there before daybreak, within, but not far from, the borough line. Shortly before the break of day, a bugle call having been heard in the adjoining Borough of Bentleyville, one of the special police went there to investigate, and there found large bodies of men assembling, which fact he promptly reported to the officers in Ellsworth. Shortly after daybreak, while the burgess of the Borough of Ellsworth and these officers were so stationed, two of these defendants, Adam Getto and Mike Tarras, approached in an automobile. Arriving there, Getto said to these officers that they desired to march through the Borough of Ellsworth, whereupon the burgess informed him that they had an ordinance forbidding marches and assemblies within their borough limits without the consent of the municipal authorities, and that he would not grant such permit. Upon being so refused permission, Adam Getto demanded of the spokesman of the police as to who he was, and this spokesman, in reply, informed him that he was the burgess of that borough. Getto then replied that they were going through anyway, and he and Tarras returned to the assembled throng at Bentleyville. By this time it was daybreak. Returning to the body of men there assembled, estimated by some to have been as many as 2000 in number, Adam Getto informed them that a march through the Borough of Ellsworth had been forbidden. Their banners and flags were thereupon discarded, and this body of men there determined to overpower the authorities of the Borough of Ellsworth by force and violence. Falling into marching array, they began their march towards the Ellsworth Borough line and the police officers there assembled. In front, leading these marchers, were the three defendants. As they approached the Ellsworth Borough line, these marchers were armed with bricks, stones, clubs and other missiles. As they approached close to the borough line, they cursed and yelled, and Adam Getto rushed forward, pushed one of the officers to one side and yelled, "Come on, we are going through," and as he did so, the armed mob behind him rushed upon the assembled officers. Great tumult followed. The public peace was violently and tumultuously disturbed and the whole neighborhood terrorized. The three defendants were quickly arrested. Those following continued their attack. Bricks, stones and clubs were thrown by the attackers. Tear gas bombs were released and the attackers driven back. They did not, however, disperse, but retreating a short distance, and rearming themselves with stones, clubs and bricks, they again returned and again assaulted the officers. At least seven different times they renewed the attack; and only after the arrival of the state police were they finally dispersed, after the struggle had continued for approximately an hour.

While the testimony was to some extent in conflict, there was ample evidence to have sustained a finding of these as the facts in the case; and, if they were the facts, the verdict of the jury was certainly not against the law or the charge of the court. The fifth reason assigned, complaining that the charge of "the court was in error," specifies no error, and cannot, therefore, be sustained.

The first act of violence was committed when Adam Getto, leading these armed marchers, and shouting "Come on, we are going through," pushed aside one of the officers, and the mob at his heels simultaneously rushing at the officers with clubs, stones and bricks, had already committed an assault and the riot was already on before the defendants were placed under arrest.

The defendants' contention that they were arrested before the riot had commenced and that, therefore, they were not rioters, cannot be sustained. To be a rioter one need not be engaged in the riot until it has terminated. It is sufficient if one participates in it. Under our act of assembly (section nineteen of the Criminal Code of March 31, 1860, P. L. 382), all persons "concerned in any riot . . . [as principals or accessories] . . . shall be guilty of a misdemeanor." Every person who encourages and promotes or takes part in any riot is to be considered a rioter; "for in this crime, all concerned are principals:" In re Riots of 1844, 4 Pa. L. J. 29, 32; 1 Trickett's Penna. Criminal Law 247, 248; Com. *v.* Armstrong, 11 Phila. 656; 2 Wharton's Criminal Law (10th ed.) 423, Sec. 1545. And so one is a rioter who, although he was actually present, left the scene even voluntarily before a riot actually began, if such a one "countenanced any preliminary movements inciting to the subsequent riotous acts:" 2 Wharton's Criminal Law 422, Sec. 1542; R. *v.* Sharpe, 3 Cox C. C. 288; State *v.* Blair, 13 Rich. (S. Car.) 93. These defendants evidently not only countenanced and encouraged these marchers to commit these riotous acts, but were actually present leading them in their riotous acts, until after the riot had already commenced. After a careful review, we fail to find any reason which would justify the granting of a new trial.

And now, October 12, 1931, motions for new trial and in arrest of judgment refused.　　　　　　　　　　From Harry D. Hamilton, Washington, Pa.